IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| James M. Moreno, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 19 C 50208 |
| v. | ) | |
| | ) | Hon. Iain D. Johnston |
| John Varga, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

In this *pro se* civil rights lawsuit, Plaintiff James M. Moreno, previously a state prisoner, alleges prison staff and officials failed to protect him from an attack by another inmate. Before the Court is Defendants' motion for summary judgment. For the following reasons, Defendants' motion is granted.

**I. Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56(a), a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine dispute of material facts exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). A fact is material if it might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 508 (7th Cir. 1992).

The moving party bears the initial burden of demonstrating the lack of any genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once the moving party demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carrol v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-movant must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Hannemann v. Southern Door Cty Sch. Dist.*, 673 F.3d 746, 751 (7th Cir. 2012). "Thus, 'summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."' *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992) (quoting *Celotex*, 477 U.S. at 322 (1986)); *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1032 (7th Cir. 2019)).

When deciding a motion for summary judgment, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

## II. Northern District of Illinois Local Rule 56.1

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this court. The rule is intended "to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted). Local Rule 56.1(a) requires the moving party to provide a statement of material facts that complies with Local Rule 56.1(d). LR 56.1(a). Local Rule 56.1(d) requires that "[e]ach asserted fact must be supported by citation to the specific evidentiary material, including the specific page number, that supports it.

2

The court may disregard any asserted fact that is not supported with such a citation." LR 56.1(d)(2).

The opposing party must then respond to the movant's proposed statements of fact. *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005); LR 56.1(e). In the case of any disagreement, "a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." LR 56.1(e)(3). "[M]ere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003). The party opposing summary judgment may also submit "a statement of additional material facts that complies with LR 56.1(d)." LR 56.1(b)(3). "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." *Id*. A plaintiff's *pro se* status does not excuse him from complying with Local Rule 56.1. *See Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006).

Defendants filed a Rule 56.1 statement of material facts with their motion for summary judgment. (Dkt. 137.) Consistent with the local rules, Defendants also provided Plaintiff with a Local Rule 56.2 Notice, which explains what Local Rule 56.1 requires of a litigant opposing summary judgment. (Dkt. 138.) Plaintiff did not respond to Defendants' motion or their statement of material facts, despite the Court explaining in detail the process and importance of Rule 56.1. Dkt. 123. Accordingly, the statement of material facts are deemed admitted. LR 56.1(b)(3); *Milton v. Slota*, 697 F. App'x. 462, 464 (7th Cir. 2017) ("the [district] court was entitled to strictly enforce the local rule, even against a pro se litigant, by deeming uncontroverted statements of material fact admitted for the purpose of deciding summary judgment").

**III. Facts**

Plaintiff, James Moreno, was an inmate at Dixon Correctional Center at the time of the incident in the amended complaint. (Dkt. 130, ¶ 1.) During the relevant time period, Defendant John Varga was the Warden at Dixon; Defendant Ryan Weeks was a Counselor at Dixon; and Defendant Chad Harshman was a Correctional Officer at Dixon. (*Id*., ¶¶ 2-4.)

Moreno was attacked in his cell by another inmate, Wakefield, on December 28, 2018. (*Id*., ¶ 8.) After the attack, Moreno was taken to the health care unit for his injuries, photographed, interviewed by investigators, and then taken to an outside hospital for treatment before returning to Dixon's health care unit to spend the night. (*Id*., ¶ 9.) The next day, Moreno was moved by prison officials to segregation for his safety and security. (*Id*., ¶ 10.)

Moreno was never attacked by Wakefield before December 28, 2018. (*Id*., ¶ 11.) Moreno never requested protective custody while at Dixon. (*Id*., ¶ 12.) Moreno never requested a Keep Separate Form in response to any of his alleged attackers. (*Id*., ¶ 13.) Moreno never requested a transfer to another cell because of threats from Wakefield. (*Id*., ¶ 14.)

Moreno never spoke with Varga and he does not know if Varga ever received any of his letters. (*Id*., ¶¶ 15-16.) In the two letters that Moreno wrote to Varga, Moreno did not specifically mention Wakefield as a threat. (*Id*., ¶ 17.)

On November 13, 2018, Moreno spoke with Weeks but he did not mention Wakefield. (*Id*., ¶ 18.) When speaking with Weeks that day, Moreno made general complaints about being pressured by gangs, but he provided no specific names or descriptions of individuals except for an inmate named Thomas, whom Moreno claimed previously stole property from him, and asked that Thomas be moved to a different cell. (*Id*., ¶¶ 19-20.) Moreno did not tell Weeks about any

4

repeated encounters with Wakefield before the attack. (*Id*., ¶ 24.) Moreno did not speak with Weeks, or the counselor who replaced him, about threats from Wakefield before the attack. (*Id*., ¶ 25.)

Moreno never spoke with Harshman before the day of the attack. (*Id*., ¶ 26.) Moreno did not make any complaints to any correctional officer about threats from Wakefield before the attack. (*Id*., ¶ 28.) Moreno did not complain to a counselor about threats from Wakefield before the attack because "it did not feel like it mattered so much until the last day when he [Wakefield] started getting really aggressive." (*Id*., ¶ 29.)

Moreno filed a grievance on November 21, 2018, regarding Thomas. (*Id*., ¶ 21.) Moreno did not file a grievance about a threat from Wakefield because he "didn't know if anything was going to happen." And he "was hoping that [he] could just handle that situation." (*Id*., ¶ 23, 27.)

Moreno admitted that in the month before the attack, he was functioning as a "middleman" between Wakefield and a member of the "Crypt" gang in a prohibited scheme involving telephone privileges, and further admitted that the failure of the scheme gave rise to Wakefield's threats and attack on Moreno. (*Id*., ¶ 30.)

IV. Analysis

Moreno alleges that the Defendants failed to protect him from the December 28, 2018, attack by fellow inmate Wakefield.

Prisoners have an Eighth Amendment right to be protected from violence while incarcerated. *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). However, "prisons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more." *Id*. Accordingly, a failure to protect claim cannot be based "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir.

2005). Instead, to succeed on a claim for failure to protect, a plaintiff must establish "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010).

General statements that a prisoner fears being attacked, or wants to be moved elsewhere, are insufficient unless the prisoner describes who is threatening him and the basis for the threat. *See Klebanowski v. Sheahan*, 540 F.3d 633, 639-40 (7th Cir. 2008).

Importantly, as to all Defendants, Moreno never made any requests to be placed in protective custody and never submitted a Keep Separate Form in response to any threats or attacks. In addition, Moreno testified that he did not file a grievance about a threat from Wakefield because he "didn't know if anything was going to happen."

### **Defendant Varga**

Moreno concedes that he never spoke with Varga about concerns of his safety as to any fellow inmates. Instead, Moreno relies on two letters he sent to Varga. However, Moreno concedes that he has no knowledge if Varga ever received the letters and that he did not specifically mention Wakefield in his letters. Plaintiff simply fails to demonstrate a genuine issue of material fact as to whether Varga knew of a threat to Plaintiff's safety by any inmate, let alone Wakefield.

### **Defendant Weeks**

Moreno spoke with Counselor Weeks on November 13, 2018, over a month before the December 28, 2018, attack. Moreno concedes that during the conversation he did not mention Wakefield. Instead, Moreno contends to have made a general statement about being pressured by gangs and he concedes that the only fellow inmate he spoke about was Thomas regarding missing property. Nor would Weeks have knowledge of concerns by Moreno about Wakefield through

6

grievances because Moreno did not submit any grievances about any issues with Wakefield before the attack. Moreno again fails to demonstrate a genuine issue of material as to whether Weeks knew of a threat to Plaintiff's safety by Wakefield.

**Defendant Harshman**

Moreno admits that he did not speak with Harshman before the day of the attack. The parties dispute the content of a conversation between Moreno and Harshman the day of the attack. Plaintiff testified that on the day of the attack he told Harshman that he "might get into it with this dude [Wakefield]." Moreno Dep., pg. 98:6-7. According to Moreno, Harshman responded, "I don't know what you want from me. You know what your options are." *Id*., pg. 101:6-7. Moreno did not respond and "just dropped the thing back down." *Id*., pg. 101:13-14. Harshman denies the conversation. However, assuming it took place as Moreno asserts, Moreno's vague statement about the mere possibility that he might "get into it" with Wakefield does not demonstrate that Harshman had actual knowledge of impending harm to Moreno by Wakefield. See *Brown*, 398 F.3d at 913; *Santiago*, 599 F.3d at 756.

"Summary judgment is the proverbial put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020). Moreno has failed to show a genuine dispute of material fact exists that any of the Defendants knowingly failed to prevent Moreno from an attack by Wakefield – an attack even Moreno did not know was going to happen. Accordingly, his claims fail.

## V. Conclusion

For the reasons stated above, the Court grants Defendants' motion for summary judgment [135]. Final judgment shall enter for Defendants on all claims.[1]

Date: September 22, 2022          By: _____
                                       Iain D. Johnston
                                       United States District Judge

---

[1] If Plaintiff wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). Plaintiff need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if Plaintiff wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). A Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).